IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lamont Cutner, ) | |
| ) | Civil Action No. 6:12-2545-GRA-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Lt. Dante Wright, Capt. McBride, ) | |
| Warden McCabe, Officer Adam, ) | |
| Officer Middleton, Sgt. Lyde, ) | |
| Thomas Sears, and Captain Cotez, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 60, 71). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On December 21, 2012, the defendants filed a motion for extension of time to file dispositive motions (doc. 58). As the undersigned had not yet ruled on that motion prior to the original filing deadline for dispositive motions, the defendants filed a short motion for summary judgment motion (doc. 60) on the filing deadline, December 26, 2012. Thereafter, the undersigned granted the defendants' motion for extension of time to file dispositive motions through January 21, 2013 (doc. 61). The defendants filed a motion for summary judgment and memorandum of law, with supporting affidavits, on January 21, 2013 (doc. 71). Accordingly, the defendants' earlier cursory motion (doc. 60) has been rendered moot. On January 22, 2013, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his responses to the motions on January 22, 2013, and February 11, 2013 (docs. 73, 81).

**FACTS PRESENTED**

The plaintiff is currently incarcerated in the Lee Correctional Institution, which is part of the South Carolina Department of Corrections ("SCDC"). His claims pertain to his incarceration in Lieber Correctional Institution. The plaintiff is currently serving a life sentence for armed robbery. He alleges that on July 6, 2012, the defendants searched his cell because defendant Lt. Dante Wright wrongfully accused him of destruction of state property and drug charges. He claims he was placed in a control cell, where he slept on a steel bunk for approximately nine days without a mattress, which caused him back and neck pain. He alleges violation of his Eighth Amendment rights.

The defendants submitted the affidavit of Ann Hallman, the Branch Chief for the Inmate Grievance Branch of the SCDC. Ms. Hallman attests that on August 15, 2012, the plaintiff filed a Step 1 grievance (Grievance Number LCI 1614-12) with regard to the incident alleged in his complaint (doc. 71-5, Hallman aff. ¶¶ 8-9). The plaintiff delivered his complaint in the instant case to the Lieber mail room on August 31, 2012 (*see* doc. 1-1), and it was filed on September 10, 2012, prior to receiving any response to the grievance from the Warden.

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

2

*Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The defendants argue[1] that the complaint should be dismissed because the plaintiff failed to exhaust his administrative remedies prior to filing the instant lawsuit. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions under Section 1983 or any other federal law. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681.

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court

---

[1] As the undersigned recommends that the complaint be dismissed *without prejudice* for failure to exhaust, the defendants' remaining arguments will not be addressed.

3

noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id.* at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

In *Moore v. Bennette*, 517 F.3d 717 (4th Cir. 2008), the Fourth Circuit explained that "[u]nder the [PLRA], prisoners must exhaust 'such administrative remedies as are available' *prior to filing suit in federal court* challenging prison conditions." 517 F.3d at 725 (emphasis added) (quoting 42 U.S.C. § 1997e(a)). The reason that the administrative remedies must be exhausted prior to the filing of a civil action, as opposed to after or contemporaneous therewith, was explained by the Supreme Court in *Porter*, in which the Court stated:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

534 U.S. at 524–25. *See Cambron v. Harris*, C.A. No. 3:11-326-RMG-JRM, 2012 WL 1579580, at *3 (D.S.C. April 11, 2012), *adopted by* 2012 WL 1579497 (D.S.C. May 4, 2012) (stating that "[a] prisoner does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation.").

The plaintiff claims that he did exhaust his remedies because he "was thinking they probably done thrown my grievance away when they didn't respond to my step one being that the grievance was filed on SCDC employees. If SCDC employee staff would have responded with the correct time frame according to policy I would have known to wait to file

4

a appeal of Step 2" (doc. 81 at p. 4). However, the SCDC grievance process provides that the Warden should respond to a grievance within 40 days.[2] Moreover,

> [T]he SCDC policy provides that if, at the institutional level, the response to the grievance exceeds the established time limits, the grievance *will automatically proceed to the next level of appeal*. See Section 13.6 of SCDC Policy issued 1-1-2006 (emphasis added). Accordingly, when the Warden fails to respond to an inmate's Step 1 grievance, the inmate must refrain from filing suit in federal court until all time periods for both steps to be completed have expired (approximately 114 days). Presumably this is because within the SCDC the Step 1 grievance automatically proceeds to the next level of appeal where the Inmate Grievance Coordinator may respond to the inmate and resolve his complaint.

*Jones v. Kay,* C.A. No. 07-3480-SB, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007). The plaintiff delivered his complaint in this case to the Lieber mail room just 16 days after he filed his Step 1 grievance, and the complaint was filed just 26 days after the plaintiff filed

---

[2]"The court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA-01.12." *Malik v. Ward*, C.A. No. 8:08-cv-1886-RBH, 2010 WL 936777, at *2 n.4.

> As noted in *Jones v. Kay*, No. 07-3480-SB, 2007 WL 4292416 (D.S.C. Dec. 5, 2007), the time limits of this policy are summarized as follows:
>
>> (1) an inmate must fill out a Form 10-5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;
>>
>> (2) the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;
>>
>> (3) the Warden should respond to the grievant in writing within forty (40) days;
>>
>> (4) the inmate may appeal by completing a Form 10-5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and
>>
>> (5) a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.
>
> *See* SCDC Policy GA-01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

*Id.* (quoting *Jones*, 2007 WL 4292416, at *5).

5

his Step 1 grievance. "After approximately 114 days have passed, [a prisoner] will have exhausted such administrative remedies as are available." *Id*. at *5. "This time period gives the prison administrators a chance to resolve the matter without implicating judicial oversight of prison administration which is disfavored." *Id.* The plaintiff did not give the grievance process an opportunity to work prior to filing his federal complaint as required by the above-cited law. As such, the case should be dismissed as the plaintiff failed to properly exhaust his administrative remedies.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 71) be granted and the plaintiff's complaint be dismissed *without prejudice* for failure to exhaust administrative remedies. The defendants' earlier cursory motion for summary judgment (doc. 60) is rendered moot based on the timely filing of the later motion, memorandum of law, and supporting exhibits.

Kevin F. McDonald
United States Magistrate Judge

March 19, 2013
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).